The United States Court of Appeals for the Ninth Circuit is now in session. You may be seated. Good morning, ladies and gentlemen. As you can see, we're joined by Judge Gould from Seattle. How are you, Judge Gould? I'm fine. Good morning. Good morning. We will proceed to the first case on the oral argument calendar, which is Barseghyan v. Garland. Counsel, you may be seated. Good morning, Your Honor. Kevin Harris for the petitioner. Go ahead. Oh, okay. Good morning, Your Honor. In reviewing this case, it came to my attention that the reason that the court probably requested oral argument was to reconcile this with the recent per curiam decision in Allum v. Garland, 11 Calforth, 1133, I mean, 11 Fedforth, 1133, and its progeny, Lee v. Garland, 13 Fedforth, 954, and Kumar v. Garland, 18 Fedforth, 1148. And so I'm prepared to discuss the impact of those cases upon what has already been briefed. And in looking at this particular matter, it appears to me that not any one of the four grounds that the IJ had found there was discrepancies with the credibility were of any significant nature. And in regards to that, even though the heart of the matter may not necessarily be a basis for just the credibility, we're looking at the totality of the circumstances. And when you look at the totality of the circumstances, in a case in which there's persecution, the credibility issues must go to those issues that relate to the actual persecution. And when I reviewed the things, the alleged inconsistencies, when you're looking through those that the judge found, like, for example, the first one, which was the police called him to the police station on January 23rd, 2013, or that they came to his place. That's inconsequential because of the fact that he went there. The real issue, when you look at the totality of the circumstances, is it's unbelievable that the persecution itself occurred. And when you look at the second thing that they bring up, which is that he was taken to the hospital, when you look at the judge's pro-offered reason for finding him incredible, is that she inferred that he went on his own. And there's nothing that supported her inference. In fact, when you look at what happened, and you look at the hospital report itself, it shows that he would have been unable to take himself from the police station to the hospital because of the fact that he had a brain concussion. So there's at least another one of the things that they relied upon to attack credibility that falls by the wayside. And then the third one that they talk about is, in fact, when you look at the second one that I just mentioned, that actually came up in Kumar v. Garland. Because in Kumar v. Garland, there was a situation where they were shooting everybody up and he was down under the bodies, and they didn't believe that he could do that because of the medical condition. Here we have a doctor's report specifically saying that he had a brain concussion, which supports his position all along that he was taken over to the hospital by the police. The third one, alleged inconsistency, may I interrupt you for a moment, Mr. Harris? All right. Okay. Guide me, if you can, by the use of the phrase, totality of the circumstances. Why is that not inconsistent with the deference we give to the agency as to make factual findings? How can we evaluate an inconsistency in the totality of the circumstances without, in fact, weighing the circumstances and the evidence of the circumstances? Isn't it contradictory to say that we give deference to the agency on findings, but we have to weigh the totality of the circumstances? I would agree with your honor on that. The vast majority of my career has been 30 years doing discrimination law. When you look and you talk about totality of the circumstances in regards to other federal statutes under 42 U.S.C. Section 1982 and 42 U.S.C. Section 1983, when we were talking about the totality of the circumstances, you're looking at the end result. Is there discrimination? Is there persecution? The same issues would arise. And the ultimate issue of fact is, is it believable that this person was persecuted? And the only way to do that is to review all the evidence and not nitpick out little inconsistencies, which when looking, you know, I think that the best example of that is in a Cardi v. Superior Court, 17 CALAP 4341. A single photograph of two sumo wrestlers engaged in combat may give the impression they are dancing Paidu. One must witness the entire match to appreciate the meaning and significance. A play cannot be understand on the basis of some of the scenes, but only on its entire performance. And similarly, and that's in relationship to a discrimination analysis, must concentrate not on individual incidents, but on the overall scenario. And that also states Andrews v. City of Philadelphia, 895 Fed 2nd, 1469. So the same thing should apply here. When we're dealing with issues of persecution, you look at the whole picture, and you don't separate out little parts that may show little inconsistencies, because the ultimate issue is what we want to get to. And the ultimate issue is, is it credible that this person was beaten by the police and persecuted? And if you look at the entirety of the evidence in this particular case, it is clear that he was, because the hospital report establishes that there was an actual brain concussion. So whether he was arrested at home or arrested at the police station is a trivial matter? I don't think it makes a difference, because one way or another he was going to be compelled to be there. And even though, you know, that's why I don't think that it is of significant, you could consider it, but that's not the ultimate issue. The ultimate issue here is, is it credible that he was persecuted? And I think when you have stronger evidence, like the hospital bill, the hospital document showing that he was. And then the other fourth thing that they talk about is that he used the bizarre as a word once in his declaration. But when he testified, he talked about going to several different places, which all could have been bizarres. Of course they could have been any sort of other things, other events that were taking place. But that's corroborated. That's corroborated by the statement made by the individual with the press. The one that said that he had, that she had seen him at numerous places dealing with these, speaking out about the corruption and everything. Mr. Harris, I'm sorry to interrupt you, but I'd like you to address one question for me. Okay. Before you're totally done. And that is this, if we're persuaded to your view, and we think that some of the inconsistencies stated by the IJ were not really inconsistencies, or weren't supported by the evidence. And if we're going to remand to the agency, if we grant the petition and remand to the agency, should that be on an open record? Yes. I think that, meaning an open record, meaning the ability to take further testimony? I mean that either your client or the government can submit more evidence. Yes, I believe that that would be appropriate. You're down to under a minute. Do you want to reserve? No, I'll reserve. We'll hear from the government. May it please the court, Brooke Maurer for the respondent, the U.S. Attorney General. I want to start off by addressing the totality of the circumstances. I do believe that counsel is a little bit misguided on what the actual purpose behind totality of the circumstances are. For the agency to review the findings, it's the totality of the testimony and evidence presented, whether or not he met his burden. And right now for credibility, we're not looking at whether or not he was persecuted. We're looking at whether or not he testified credibly before the agency. And here, with a list of four pertinent inconsistencies and discrepancies, as well as backtracking during testimony, the I.J. did not err in making this determination. Now, petitioner wants to nitpick each one of these points and say that neither one of them or none of them are sufficient enough. However, each one of them dealt with a very, very pertinent basis to his claim. First, his arrest, when he was picked up or whether he was arrested or whether he went there himself. Then the harm that he suffered, how he got to the hospital, what happened. Why do you see an inconsistency when a statement that he went to the hospital and then he testifies he was taken to the hospital when the medical records indicate that he was knocked out? I think the I.J. was also concerned about his responses whenever he was questioned about that, that he would just keep oscillating and just changing the story as he went in there. And that, you know, the demeanor and the oscillating and the repeated changing in what his story was when questioned about things that didn't match up, that also posed a problem. So, in answer to my question, are you in agreement that there was really no inconsistency with a statement that he went to the hospital and he was taken to the hospital? Oh, no, no. He went to the hospital. We have no disagreement that he went to the hospital. Yeah. I also have, I mean, and petitioner also failed to say the basis for his arrest, which was, you know, whether he produced drawings at a bazaar or whether he traveled from village to village or wherever people were gathered. And then when confronted with that, he again changed his testimony multiple times. And finally, whether or not police were looking for him, where he testified that people were looking for him since January 23 of 2013. And then when he was questioned about the fact that he was able to leave with his passport and had no police intervention, he then changed his mind again and decided that there were no police looking for him at that time. Taken cumulatively, with the totality of the circumstances, the immigration judge and later the board, by affirming this, did not err in making this determination. So, with respect to the fact that it was at a bazaar or multiple bazaars, that was a BIA finding, correct? No, I do believe the IJ also cited that in its decision. I can pull it up? Many a paper, many a pile. I apologize. It's all right, I'm looking as well. There's a gentleman. Maybe, am I wrong? Well, my notes reflect that the BIA made that finding and the IJ didn't. And if that is just under that assumption, we can both check later. Yeah, okay. We can't rely on that adverse credibility finding that was made for the first, that was made for the first time by the BIA. You'd agree with that? Well, if they made that finding in the first instance, yes. No, we can check later, but that's just what I have in my notes. Okay, perfect. All right. And then independently, the petitioner's corroborating evidence failed to basically rehabilitate his adverse credibility determination. And respondent notes that in the letter that petitioner relies upon from the TV person, there were a lot of embellishments in there that petitioner never claimed on appeal, especially where he was like his family was suffered and he suffered loss of income and loss of job opportunities. Those were claims that were never raised to anyone in the court of appeals. Or in the, I'm sorry, in the immigration judge or to the agency itself. Counsel, I have a question for you. If I could, please. With regard to the points that the judge thought, immigration thought were inconsistent, was Barseghin confronted with that or asked if he could explain his inconsistency? Most of the time, yes, he was. And that's where a lot of the inconsistencies came from, especially when the petitioner was asked things about, he would say that IJ would have them go back or counsel would have him go back and look at his declaration. It says on your declaration, you said this. And then he tried to explain this. And when he did, that's when the story began oscillating on various issues. And if you want, I can provide the court like a letter brief or anything at a later date. But I also think it's outlined in my brief of where the petitioner was questioned. That's fine. No, I don't need anything else. Okay. Yes, sir. If there's no further questions, the respondent will rest on their briefs. Thank you. Counsel. We'll hear rebuttal. You've got about a minute, 38, 38 seconds. All right, your honor. I would point out in relationship to him leaving the country. That was something that the government wanted him to do because he would No longer be going out and, and doing his political protests because he would no longer be in the government. So to point that out as some sort of inconsistency seems disingenuous because the object of the government to prevent him from doing his political activities would take place when he left. Very good. If the board has anything else. No, thank you, counsel. Thank you both for your arguments this morning. And the case just argued will be submitted for decision. Thank you.
judges: THOMAS, GOULD, BEA